UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZAMEER RIAZ AZAM, | No. C 05-1627 MHP (pr) |
| Plaintiff, | **ORDER GRANTING SUMMARY JUDGMENT FOR DEFENDANTS** |
| v. | |
| COUNTY OF ALAMEDA; et al., | |
| Defendants. | |

## INTRODUCTION

Zameer Riaz Azam, a California prisoner at Folsom State Prison, filed this pro se civil rights action under 42 U.S.C. § 1983, alleging that his constitutional rights were violated during child dependency proceedings in Alameda County. This case is now before the court for consideration of defendants' motion for summary judgment. The court will grant summary judgment because the individual defendants are entitled to absolute immunity for their alleged conduct and because there is no evidence supporting Azam's Monell claim against the County defendant.

## BACKGROUND

A.  Azam's Current Incarceration

Azam is now in Folsom State Prison serving a 12-year prison sentence imposed after his convictions for kidnapping, inflicting corporal injury on a cohabitant, making criminal threats, attempting to induce false testimony, and disobeying a written court order. See Def. Request For Judicial Notice, Exh. A (opinion affirming judgment of conviction in People v. Azam, 2006 WL 1756842 (Cal. Ct. App. 2006)). The California Court of Appeal recounted

Azam's repeated threats and acts of violence toward his then-girlfriend Jennifer Bascom ("Jennifer"), who was also the mother of his child, Alina Bascom ("Alina").  The state court particularly described the beating and threats by Azam on August 26, 2003, that occurred in front of 2-year old Alina and 7-year old Nicholas Bascom ("Nicholas") and resulted in a trip to the hospital for Jennifer.  Id. at *1.  That court also described Azam's threatening behavior toward Jennifer on August 30, 2003, trying to get her to change her story about the events of August 26, 2003 so the criminal charges would be dropped.  According to the California Court of Appeal, the violence culminated on November 1, 2003 when Azam became angry about an e-mail Jennifer had sent to a friend:

> Defendant [i.e., Azam] hit the victim [i.e., Jennifer] on both sides of the head and in the face because he was convinced that she was cheating on him.  He grabbed her by the neck and threw her over a room divider, then pulled her by her hair into his bedroom, where he punched and slapped her in the face and kicked her legs.  He followed her into the bathroom and pushed her into the glass shower door that shattered in pieces.  He continued to punch and slap her, and at one point took out a knife and told her how easy it would be to kill her.  The victim offered him money and asked what he wanted.  He responded: "Your life."  [¶] When defendant let go of her, the victim ran out the front door and across the street, pounded on a neighbor's door, and screamed for help.  Defendant came up behind her, told her to shut up, and grabbed her by the hair.  When defendant began to run back to his house, the victim fell and was dragged across the street, a distance of approximately 38 feet.  A neighbor was alerted by the victim's son and called the police. When police arrived, defendant released the victim and ran back into the house.

Cal. Ct. App. Opinion, 2006 WL 1756842, *2 (footnote omitted).

The foregoing information about Azam's criminal case puts the dispute here in context, as the current action concerns child dependency proceedings conducted for Alina and Nicholas after the criminal proceedings were commenced against Azam.  Azam contends that various participants in the child dependency proceedings made misrepresentations and failed to correct misrepresentations about him.  The alleged false statements were that (1) Azam had kidnapped Jennifer and Alina on August 30, 2003, (2) Azam had threatened to kill the grandmother, Jennifer and Alina, (3) Azam had raped Jennifer in the presence of Alina, (4) Azam had beaten and kidnapped Jennifer and Alina, and (5) Alina had stated to Pleasanton police, "'bad daddy, beat mommy.'" Azam Decl., ¶ 31.  Azam has not provided any evidence that any defendant asserted first-hand knowledge of this information; to the

2

contrary, his evidence indicates that the defendants summarized what had been learned from other sources during the child dependency investigation. Azam Decl., ¶ 31, 38. Alina and Nicholas apparently remained in the physical custody of their mother.

The following facts are undisputed unless otherwise noted:

B.  The Parties

The allegations of the second amended complaint concern events occurring from December 17, 2003 through July 1, 2004.

At the time, Azam was in custody in the Santa Rita facility of the Alameda County Jail, awaiting trial on domestic violence and other criminal charges. Azam was the biological father of the 2-year old Alina. He was not the father of the 7-year old Nicholas.

Defendant Sherene Somerby was a Child Welfare Worker II in Family Maintenance for the Alameda County Social Services Agency, Department of Child and Family Services. Her duties were to ensure the safety and welfare of the dependent minors while they resided in their parents' care. This included assisting the parents in meeting their case plan requirements by helping them access services that could strengthen their parenting skills. Her duties also included drafting Status Review Reports ("SRRs"), which were reviewed and approved by the appropriate Child Welfare Supervisor. Upon review and approval, the SRR would be submitted to the juvenile court department of the Alameda County Superior Court. She was assigned to the Bascom case on or about April 2004.

Defendant Kathleen Pacheco was an employee of the Alameda County Counsel's office. As Deputy County Counsel, Pacheco represented Alameda County Social Services Agency, Children and Family Services at the December 17, 2003 jurisdiction and disposition trial and at the July 1, 2004 hearing.

Defendant Raquel Lacayo-Valle as an attorney in the Alameda County Public Defender's Office, Dependency Division. Her involvement in this case was as the attorney assigned from the Public Defender's office to represent the interests of Alina and Nicholas in the dependency proceedings. In that capacity, she attended court hearings on June 2, 2004 and on July 1, 2004.

C.      The Child Dependency Proceedings

As a result of the domestic violence charges brought against Azam in 2003, the Alameda County Social Services Agency, Children and Family Services ("Social Services") was contacted to investigate matters concerning Azam's alleged abuse of Jennifer and her two minor children, Alina and Nicholas. Social Services employees obtained numerous pages of police reports from the Pleasanton Police Department concerning Azam's treatment of the children and Jennifer. Social Services employees also contacted and interviewed police officers, family members, the children, and Jennifer. The parties dispute whether Social Services employees attempted to contact and interview Azam during the investigation.

After investigating the matter, Social Services filed a Juvenile Dependency Petition. The petition asserted under California Welfare and Institutions Code § 300(b) that both Nicholas and Alina were at risk.

Azam contested the Juvenile Dependency Petition. As a result, a jurisdiction and disposition trial was set for December 17, 2003.

Azam was brought from the county jail and attended the jurisdiction and disposition trial on December 17, 2003. He was represented by Patrick O'Rourke, an attorney experienced in representing parents at such trials. At the completion of the jurisdiction and disposition trial, the court found true the allegations of the Juvenile Dependency Petition as amended. The court took jurisdiction of Nicolas and Alina. This was a determination of their legal status and apparently did not mean that the children were physically removed from their home. See Cal. Welf. & Inst. Code § 300 ("Any child who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge that person to be a dependent child of the court . . . .") Following the recommendation of Social Services, the court ordered Nicholas and Alina to be placed in-home with Jennifer. Azam did not appeal this decision.

Defendant Somerby, a Child Welfare Worker II in Social Services, was assigned to the Bascom case on or around April 2004. She prepared the SRR for the June 2, 2004 hearing. Her signature on the SRR was dated May 19, 2004. Somerby Decl., Exh. A, p.13.

4

During the time Somerby was assigned as the Child Welfare Worker for the Bascom case, Jennifer completed all the requirements of the case plan that had been drawn up for her and her family – including therapy for her and Nicholas as well as a parenting class.

On June 2, 2004, a "six-month family maintenance review" hearing was held. At the hearing, Somerby recommended to the court that Jennifer be granted full physical and legal custody of both children and that no visitation be permitted for Azam. Azam's attorney was present but Azam was not present at the hearing. Because Azam's attorney objected to the dismissal of Alina's case without a hearing as to the custody order, the court set the matter for another hearing on July 1, 2004. Nicholas' court dependency was dismissed and Jennifer was granted sole physical and legal custody with no visitation to the father.

At the hearing on July 1, 2004, Azam and his attorney were present, as were defendant Lacayo-Valle (representing the interests of Alina) and defendant Pacheco (representing Social Services). Somerby also attended the hearing. At the hearing, an offer of proof was made that Azam would testify he had participated in various classes while incarcerated. Much of his class work was irrelevant (e.g., a barbering class, a GED class, an HIV education class, and a certificate of ministry) to the dependency case plan. See Azam Decl., Exh. C, 7/1/04 RT 5-7, 16. He did, however, have certificates showing his completion of a substance abuse program and a domestic violence/anger management program. Id. at 7. No live testimony was presented. The court adopted Somerby's recommendations and awarded full legal and physical custody of Alina to Jennifer with no visitation rights for Azam, and dismissed the dependency proceedings. According to argument at the hearing, Azam was not forever barred from contact with Alina and could later move under the California Family Code to regain access to, and custody of, Alina if circumstances changed. See id. at 12-14.

## VENUE AND JURISDICTION

Venue is proper in the Northern District of California because the events or omissions giving rise to the claims occurred in Alameda County, which is located within the Northern District. See 28 U.S.C. §§ 84, 1391(b). This Court has federal question jurisdiction over this

action brought under 42 U.S.C. § 1983.  See 28 U.S.C. § 1331.

## LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and [that] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Generally, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact.  The burden then shifts to the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (citations omitted).

On issues as to which the moving party bears the burden of proof at trial -- such as the qualified immunity defense in this case -- he must come forward with evidence which would entitle him to a directed verdict if the evidence went uncontroverted at trial.  See Houghton v. Smith, 965 F.2d 1532, 1536 (9th Cir. 1992).  He must establish the absence of a genuine issue of fact on each issue material to his affirmative defense. Id. at 1537.  Once the moving party has come forward with this evidence, the burden shifts to the non-movant to set forth specific facts showing the existence of a genuine issue of fact on the defense.

A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence.  See Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's

verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge). Plaintiff's second amended complaint, which superseded earlier pleadings, is not verified and is not considered as evidence.

The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. See T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. See id. at 631.

## DISCUSSION

A.   Absolute Immunity For Individual Defendants

The United States Supreme Court has recognized that some officials perform special functions which, because of their similarity to functions that would have been immune when Congress enacted 42 U.S.C. § 1983, deserve absolute protection from damages liability. Buckley v. Fitzsimmons, 509 U.S. 259, 268-69 (1993). This immunity extends to individuals performing functions necessary to the judicial process. Miller v. Gammie, 335 F.3d 889, 896 (9th Cir. 2003). Under the common law, judges, prosecutors, trial witnesses, and jurors were absolutely immune for such critical functions. Id. Courts take a "'functional approach'" to the question of whether absolute immunity applies in a given situation, meaning that they look to "'the nature of the function performed, not the identity of the actor who performed it.'" Buckley, 509 U.S. at 269 (citations omitted); see also Kalina v. Fletcher, 522 U.S. 118, 125 (1997) ("Our later cases have made it clear that it is the interest in protecting the proper functioning of the office, rather than the interest in protecting its occupant, that is of primary importance.") Thus, state actors are granted absolute immunity from damages liability in suits under § 1983 only for actions taken while performing a duty functionally comparable to one for which officials were immune at common law. Miller, 335 F.3d at 897.

Prosecutors are absolutely immune in "initiating a prosecution and in presenting the State's case." Id. at 896 (quoting Imbler v. Patchman, 424 U.S. 409, 431 (1976)). These duties include some actions preliminary to the initiation of a prosecution and actions apart from a courtroom, including preparing for and initiation of judicial proceedings or for trial. See Buckley, 509 U.S. at 272-73. For example, a prosecutor was held to have absolute immunity for preparing the information and a motion for an arrest warrant, but not for executing a certification for an arrest warrant that summarized the evidence supporting the charge and in which she personally vouched for the truth of the facts set forth in the certification. Kalina, 522 U.S. at 121, 129. The prosecutor did not have immunity for the executing the certification because she was considered to be acting as a complaining witness rather than a lawyer when she executed the certification under penalty of perjury – no law required that a prosecutor sign the certification and any competent witness could have done it. See id. at 129-30.

Social workers enjoy absolute immunity from damages for performing functions similar to those for which prosecutors are immune. Miller, 335 F.3d at 898. "[S]ocial workers are immune for their 'actions in investigating and presenting evidence to the dependency court,' which must realistically under the California procedure include verifying the [dependency] petition." Beltran v. Santa Clara County, No. 05-16976, slip op. 7565, 7572 (9th Cir. June 25, 2007) (quoting Doe v. Lebbos, 348 F.3d 820, 825 (9th Cir. 2003)). Social workers also are entitled to absolute immunity for signing and verifying custody petitions. Id. at 7573. A social worker's "actions in allegedly failing to investigate adequately the allegations of abuse and neglect against [the father] and in allegedly fabricating evidence in the dependency petitions she prepared for the court were part of the initiation and pursuit of child dependency proceedings, for which [the social worker] was entitled to absolute immunity." Lebbos, 348 F.3d at 823. Social workers also have absolute immunity for "the initiation and pursuit of dependency proceedings, including their testimony offered in such proceedings." Mabe v. San Bernardino County Dept. of Public Social Services, 237 F.3d 1101, 1109 (9th Cir. 2001) (upholding summary judgment for

8

1  defendants based on allegations that "social workers did not conduct the investigation
2  properly, were allowed to submit false evidence during the juvenile court proceedings, and
3  interfered with [mother's] custody rights"). Although some of the Circuit authorities cited by
4  the parties predate the Supreme Court's 1997 decision in Kalina and 1993 decision in
5  Buckley and might be of questionable precedential value due to greater focus on a
6  defendant's title than a defendant's function, the Mabe, Lebbos, Beltran, and Miller cases all
7  were decided after those Supreme Court cases and noted the need to focus on the function in
8  deciding whether a social worker had liability for a particular act or omission. With these
9  cases in mind, the court now considers Azam's claims against the defendants who have
10 asserted that they are absolutely immune from liability for the acts and omissions alleged by
11 Azam in his second amended complaint.

      1.     Social Worker Somerby

Azam claims that defendant Somerby is liable, and has no immunity, for her investigation of the dependency case, for presenting allegedly false information and for failing to provide information to the court that was favorable to Azam. See Opposition, p. 15 ("The actions that Ms. Somerby was taking which has provoked this lawsuit is one of an investigator, investigating the facts of the case, writing out a report, then submitting the report to a court of law for prosecution.")

Defendant Somerby has absolute immunity for the conduct of which Azam complains because her alleged misdeeds were done in the performance of work that was analogous to the function of the prosecutor in initiating and prosecuting a criminal case. The Lebbos and Mabe cases both found absolute immunity for social workers against claims that they did not conduct the child dependency investigations properly, claims that they falsified evidence in the petitions and in their testimony, and claims that they fabricated evidence during the dependency proceedings. Azam's argument that California Government Code § 820.21 strips social workers of immunity and therefore precludes absolute immunity for Somerby fails because that statute does not apply to a § 1983 claim such as his. Beltran, slip op. at 7574-75. Looking at the nature of the function Somerby performed, the court concludes that

9

Somerby has absolute immunity from the claims in Azam's second amended complaint.

2. <u>Attorney Pacheco</u>

Azam argues that county counsel Pacheco is liable for her failure to step forward to alert the court to false statements made by other people. <u>See</u> Opposition, pp. 16-17 ("Even though she never asserted false facts in a Court of Law[, she] was still under a legal and ethical duty to inform the Court that false statements of fact were being asserted in the Court.")

Defendant Pacheco is entitled to absolute immunity for the acts and omissions alleged in Azam's second amended complaint. The acts and omissions of which Azam complained took place in the courtroom while Pacheco represented the interests of the Social Services and the County in juvenile court. She performed functions that were critical to the judicial process in the dependency case. Her duties were comparable to those of a prosecutor who acted as an advocate for the state in the criminal justice system. She did not act as a complaining witness and did not give testimony. She has absolute immunity from the claims in Azam's second amended complaint. Although she was not actually a prosecutor of a criminal case, the Supreme Court's decisions lead to the conclusion that she had absolute immunity for her acts of advocacy – whether the acts were affirmative misstatements or failures to correct other people's misstatements -- during the child dependency proceedings. <u>Cf.</u> <u>Buckley</u>, 509 U.S. at 270 (absolute immunity was available for prosecutor's participation in a probable-cause hearing because "[i]mmunity for that action under § 1983 accorded with the common-law absolute immunity of prosecutors <u>and other attorneys</u> for eliciting false or defamatory testimony from witnesses or for making false or defamatory statements during, and related to, judicial proceedings"); <u>Briscoe v. LaHue</u>, 460 U.S. 325, 335 (1983) (quoting <u>Butz v. Economou</u>, 438 U.S. 478, 512 (1978) (common law recognized that absolute immunity was necessary "'to assure that judges, <u>advocates</u>, and witnesses can perform their respective functions without harassment or intimidation.'")

### 3. Attorney Lacayo-Valle

Azam argues that attorney Lacayo-Valle is liable because she made known false accusations against him during a hearing on the dependency petition.

Defendant Lacayo-Valle has absolute immunity for her alleged misconduct. During the dependency proceedings, assistant public defender Lacayo-Valle represented the interests of Alina and Nicholas. As representative of the minors' interests, she performed functions that were critical to the judicial process in the dependency case. She did not act as a complaining witness and did not testify. Lacayo-Valle's role did not closely parallel that of a prosecutor, as she was there to protect the child's interests and defendants have not provided authority that this was comparable to the representation of the state's prosecutorial interest, although the appointment of counsel to represent a child's interest may have stemmed originally from the state's parens patriae role. Although Lacayo-Valle was not a prosecutor of a criminal case, the Supreme Court's decisions lead to the conclusion that she had absolute immunity for her acts of advocacy during the child dependency proceedings. Cf. Buckley, 509 U.S. at 270; Briscoe, 460 U.S. at 335.

In light of the determination that each of the individual defendants is entitled to absolute immunity, the court need not decide whether each also is entitled to qualified immunity. The court also does not reach the substantial causation problem for plaintiff: i.e., whether (in light of his conduct that led to the convictions for kidnapping, inflicting corporal injury on a cohabitant, making criminal threats, attempting to induce false testimony, and disobeying a written court order) any of the misrepresentations alleged in this action caused the interference with his familial relations with Alina. Finally, the court does not reach the question whether any of the alleged misrepresentations were in fact true because absolute immunity bars liability even if the alleged misconduct actually occurred.

### B. Monell Claim

Azam alleged in his second amended complaint that the Alameda County Department of Social Services, "as part of [its] customs, policy, practice and/or procedure uses an unconstitutional system of allowing [its] employees full control over prosecuting child

11

protective proceedings without regards to the rights of the accused and/or failed to properly train, supervise, control, or discipline [its] employees for acts of unlawful/vindictive prosecution" and that the County of Alameda failed to properly train, supervise and discipline Social Services employees. Second Amended Complaint, ¶¶ 19-20.

Local governments are "persons" subject to liability under 42 U.S.C. § 1983 where official policy or custom causes a constitutional tort, see Monell v. Dep't of Social Servs., 436 U.S. 658, 690 (1978); however, a municipality may not be held vicariously liable for the unconstitutional acts of its employees under the theory of respondeat superior, see Board of County Comm'rs v. Brown, 520 U.S. 397, 403 (1997); Monell, 436 U.S. at 691. To impose municipal liability under § 1983 for a violation of constitutional rights, a plaintiff must show: (1) that the plaintiff possessed a constitutional right of which he or she was deprived; (2) that the municipality had a policy; (3) that the policy amounted to deliberate indifference to the plaintiff's constitutional rights; and (4) that the policy was the moving force behind the constitutional violation. See Plumeau v. School Dist. #40 County of Yamhill, 130 F.3d 432, 438 (9th Cir. 1997).

A municipality may be liable for constitutional violations resulting from its failure to train its workers where the inadequacy of the training amounts to deliberate indifference to the rights of the people with whom the municipality comes into contact. See City of Canton v. Harris, 489 U.S. 378, 388 (1989); Van Ort v. Estate of Stanewich, 92 F.3d 831, 835 (9th Cir. 1996); Mackinney v. Nielsen, 69 F.3d 1002, 1010 (9th Cir. 1995). Only where a failure to train reflects a "'deliberate' or 'conscious' choice" by a municipality can it be thought of as a municipality's policy or custom that can support liability under § 1983. See Harris, 489 U.S. at 389. It is not enough to simply say that a training program represents a policy for which the municipality is responsible.

> That much may be true. The issue in a case like this one, however, is whether that training program is adequate; and if it is not, the question becomes whether such inadequate training can justifiably be said to represent "city policy." It may seem contrary to common sense to assert that a municipality will actually have a policy of not taking reasonable steps to train its employees. But it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of

12

constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury.

Id. at 389-90. The appropriate inquiry on the causation issue is whether the injury would have been avoided "had the employee been trained under a program that was not deficient in the identified respect." Id. at 391. But-for causation is not enough; "[r]ather, the policy must be the proximate cause of the section 1983 injury." Van Ort, 92 F.3d at 837. As in traditional tort cases, an intervening cause may break the chain of proximate causation in a § 1983 action. See id. (defendant's unforeseeable private acts defeated proximate cause connecting county's alleged negligence to plaintiffs' injuries). Rigorous standards of culpability and causation must be applied to ensure that a municipality will not be held liable solely for the actions of its employee on a prohibited respondeat superior theory. See Board of County Comm'rs v. Brown, 520 U.S. at 405.

The starting point here is to note the limited nature of the liability question. Alameda County cannot be held liable merely because it employed the other defendants -- that would be impermissible respondeat superior liability. See Monell, 436 U.S. at 694. Because there is no potential for respondeat superior liability, Alameda County can avoid liability even if its employees engaged in unconstitutional behavior if it can show it was not liable on a policy or failure-to-train theory.

Azam has failed to produce any evidence in support of his Monell claim. Azam's allegations that there was a failure to train are completely lacking in evidentiary support. See, e.g., Azam Decl., ¶ 89-91. In fact, the reasonable inference to be drawn from Azam's evidence is that he does not know exactly what Alameda County had done, as even his statements under oath are cast in "either/or" and "if . . . then" type language. See, e.g., Azam Decl., ¶ 49 (Social Services "has either failed to properly train its employees in proper procedures in 'Filing a Petition' or allows its employees to file known false facts in their Court of Laws"), ¶ 89 ("supervisor should have noticed the numerous false facts contained in the report . . . If the supervisor . . . didn't know of the false facts contained in the report

13

before allowing it to be submitted to the Court, then Alameda County has failed to properly train its employees, and if the supervisor did know of the false facts contained in the report, then Alameda County has a policy, practice and/or procedure of allowing its employees to ignore exculpatory evidence, use false evidence and engage in malicious/vindictive prosecution"), ¶ 90 ("if Alameda County does have 'numerous safeguards' in place, those safeguards were not applied or extended in my case").  Azam's submission of the Social Services policy and procedures manual does not help his cause because he failed to provide any evidence that the policy amounted to deliberate indifference to his constitutional rights or that the policy was the moving force behind the alleged constitutional violation.  And his dubious reasoning that the fact that the individual defendants allegedly violated his rights shows a failure to train them or the existence of a policy does not raise a triable issue of fact on Monell liability; instead, it is an effort to impose the impermissible respondeat superior liability on the county.

Alameda County identified the portions of the record which demonstrate the absence of a genuine issue of material fact that there was a policy or failure to train that amounted to deliberate indifference to Azam's constitutional rights and that the policy or failure to train was the moving force behind the alleged constitutional violation.  Azam did not meet his burden to designate specific facts showing that there is a genuine issue for trial on these essential elements of his claim.  Defendant Alameda County therefore is entitled to judgment as a matter of law on Azam's second amended complaint.

## CONCLUSION

Defendants' motion for summary judgment is GRANTED.  (Docket # 29.)  Judgment will be entered in defendants' favor and against plaintiff.  The clerk will close the file.

IT IS SO ORDERED.

Dated: July 11, 2007

_____
Marilyn Hall Patel
United States District Judge